May it please the Court. My name is Derek Peterson, and I'm appearing on behalf of Charles Manley. I'd like to reserve two minutes for rebuttal. Through this appeal, Mr. Manley requests reversal of the summary judgment granted against his deliberate indifference claim and state tort claims, and he requests remand of this case with an instruction that he be appointed counsel on appeal or below. Let me ask you a question before you go too far. The district court suggested that we can only consider the pre-complaint allegations, in other words, the allegations through March 29th of 2007, and as I understand it, there was a motion made to consider post-complaint allegations, and it was denied in the district court or the magistrate court. And I didn't see that appealed, and I don't see it in the opening brief. So are we only to consider the facts prior to March 29th of 2007? Your Honor, you're correct that Mr. Manley did file a motion to supplement his pleadings. But that motion was denied on procedural technicalities because he had no counsel to help him out, and he couldn't – he forgot to attach a copy of the proposed amended pleading, and on that ground it was denied. Well, I'm not talking necessarily about the malpractice action. I'm talking about the fact that we now have an Eighth Amendment claim, and it's the facts applicable to the Eighth Amendment claim, it seems, unless somebody appeals a motion that wants to put more facts into it, that I can only consider the facts prior to the complaint. And therefore, I gave March 29th of 2007, because that's the last day that we have in the evidence prior to the filing of the complaint. Your Honor, Rule 15 permits Mr. Manley, even after a final judgment, to move for – to amend or to supplement his pleadings, to conform them to the evidence. The question Judge Smith's asking is that ruling appealed, is that before us now unappealed properly. I mean, my problem is that I didn't see it appealed, so therefore, I don't see it's something I can look into. To make sure I'm understanding, you're suggesting that no post-complaint evidence should be considered by this Court in any manner? Correct, because that was considered by the magistrate, denied, and not appealed. You don't seem to have an answer to that, but let me suggest a related question. The – you've asked us to reverse because Mr. Manley should have been appointed counsel. And as you said, there were a number of technical rulings or procedural rulings or whatever we want to call them these days that affected this case because he didn't have counsel. Would that apply to this failure to appeal, or is that your problem? I think that's an important question. I mean, you're the appealer, so I'm worried about that, too. I'm not sure I understood the question exactly. Anyway, you're suggesting that – Well, let me ask you in a different, less embarrassing way, perhaps. The failure to attach whatever you're supposed to attach to the motion or to the – is that part of your appeal, that he was denied counsel who could have handled this matter properly? Yes. I think that the district court or the magistrate judge abused her discretion in failing to fully consider all of the exceptional circumstances that would have warranted appointment of counsel below. And among those, or I should say evidence of that, are the many, many examples in the procedural history of technical rulings that show that Mr. Manley was unable to articulate his claim by himself. However, you would agree, would you not, that whether to appoint counsel is then an abuse of discretion standard? That's correct. That's correct. And that the – in fact, even the statute would go so far that they may appoint counsel in exceptional circumstances? That's exactly right. And so you're just suggesting that in this circumstance, it was an abuse. That's exactly right. My position is the big abuse. Well, we have other abuse of discretion cases in appointment of counsel that seem even worse. Okay. The primary example here of the magistrate judge's abuse of discretion is Mr. Manley's second motion for appointment of counsel, in which he laid out separate and additional reasons why his motion should be granted. And yet, the magistrate judge simply republished the first order denying Mr. Manley's first motion for appointment of counsel verbatim, without any indication of any additional evaluation of the new and additional facts that Mr. Manley had added. He had been transferred to a different prison, limited his access to the record, and he laid out four or five – I can go through them if you like – four or five different and new examples that created exceptional circumstances. But there's no evidence on this record that that was ever evaluated. Did Mr. Manley need medical testimony to support his underlying claim? To support his State tour claim or to support his deliberate indifference claim? His deliberate indifference claim. Did he need medical expert opinion? Yes. Not necessarily. No. It would have been helpful, but it's not required. With the remaining time that I have, I would like to turn to the deliberate indifference claim, unless Your Honors have other questions. The Jett case, in the Jett case, this Court has found that there are two standards for a deliberate indifference, two requirements for a deliberate indifference case. First, that Mr. Manley must show that he has a serious medical need, and then second, that the defendant's response to that need was deliberately indifferent. Here, the defendants have already conceded, at least for purposes of this appeal, that Mr. Manley's chronic and substantial spinal pain constitutes a serious medical need. So all that remains is for Mr. Manley to show facts that would support a reasonable inference of that the defendants were deliberately indifferent in responding to that need. This record clearly supports such inferences. Like in the Hathaway case, here a jury could infer deliberate indifference from the fact that the defendants knew that Mr. — knew the extent of Mr. Manley's pain, knew that the course of treatment was largely ineffective, but declined to do anything more in attempt to improve Mr. Manley's situation. And that is based on, did they know all of this? What's your best evidence? That's my next point. I mean, my worry is that Mr. Manley knew how to file kites. He did know how to file kites. He did know how to file kites. No question Mr. Manley himself said he wasn't going to take Elevelle anymore. And no question that each time he filed kites, he was seen. And no question that having been seen, if we review the medical record, he was seen for everything for which he complained. The only thing that we have suggesting he didn't get medical attention is his present, I guess, suggestion that he complained about other things that aren't in the record, and yet he didn't file kites about it. Your Honor, first of all, the defendants in their briefs, they suggest that they provided treatment to Mr. Manley on ten different occasions. The last five, chronologically, of those occasions, the record shows no evidence that they actually prescribed any treatment. The record is clear that the treatment for back, you mean. That's correct, for the serious medical need at issue here. From December 4th, 2006 until November 29th, 2007, almost a full year later, and only after the defendants had learned of this lawsuit, did they continue providing treatment. But for that almost year-long period, the record is clear that no treatment was prescribed for Mr. Manley's pain. What is your best case, Counselor, for the idea that just having pain pre-op, we're talking about pre-operation, just in the normal prison circumstance without any operation, that pre-op, just having pain, is enough to meet deliberate indifference? I mean, I've got enough post-op cases about that, but I've got no pre-op cases. Okay. I don't recall if this is a pre-op case or not, but the Eleventh Circuit's Washington case specifically held that just because a condition may not be curable does not entitle defendants to withhold treatment that could even at minimum provide temporary relief from serious pain. And the Ronell's case, the Ninth Circuit's Ronell's case, held that there is no legally significant distinction between deliberately inflicting pain through a calculated withholding of medication and an unprovoked assault. In both cases, I believe the Court recognized that significant pain is a serious medical need, and that regardless of whether the particular condition, underlying condition can be cured, absent his, the fact that he was in prison, he would seek, he would be allowed to get help for his pain, and that the defendants are not entitled to simply force a prisoner to deal with significant pain when they know it exists. It looks like my time is done. Thank you, counsel. Good morning, Your Honors. May it please the Court. My name is Stephen Quinn, and I'm the Chief Deputy for the Division of the Nevada Attorney General's Office that does represent the Department of Corrections. And if I can get straight to a couple points, there is a problem in connection with inmate litigation involving medical care that's going to be reflected in the other case here, and that is, the problem is, what is the duty or what is the legal liability in fact of the Department of Correction medical staff when they attempt to render care, and they think they're doing what they should do, and there's a difference of opinion presented by the inmate who claims he's not, he or she is not getting the medical care that the inmate is entitled to get, because the inmate thinks that the inmate should be getting more. I don't know that this Court recognizes that issue on the basis of the number of cases that are presented arising out of that conflict, but I can tell you that they are numerous, and all it takes is a request for appeal, and you're going to see them all, unless we can get some definition. What we tried to do is define these cases on the basis that if there is a difference of opinion, then as a black line or black letter, that there cannot be deliberate indifference. Kennedy. So you're saying that any time a prisoner complains about the lack of medical care, it's just a question of disagreement between the prisoner and the doctor, and that's the end of the case? No, Your Honor. Honestly, I think that's too simple, and I don't know how to ‑‑ I haven't ‑‑ I didn't come here prepared to try to articulate what the difficulty is. I think it has to be ‑‑ If you can't tell us, then we should pass on, because I think ‑‑ If the care is being delivered, the evidence shows that the care is reasonable. For example, pain alone, the absence of addressing pain alone is not deliberate indifference if the pain is not severe enough to rise to the level, to implicate the Constitution. So then the second question is, if there ‑‑ Can we rely on what the prisoner tells us? You know, if you're asking from the standpoint of the court, the court has to look at what the evidence is on the basis of the record. And from the standpoint of ‑‑ so on the basis of the record in this case, on the basis of the record for a court reviewing whether the pain exists, the court looks at the record. So if the only record exists is that the patient says, I've got pain and articulates it to sufficiently that it rises to the level to implicate the Constitution and that's all the record is, then the fact is undisputed. And is that the case in this case? No, it is not, Your Honor. Very clearly it is not. You dispute the degree of pain the patient reports. Absolutely. Well, the patient doesn't even report the degree of pain as such. And the record shows that pain is a subjective thing. That is very difficult, because in the medical care, if the complaint is pain alone, then it's a very difficult thing, because pain is a subjective thing, but objective criteria may be used to measure it. In this case, you have an inmate with pain emanating from a preexisting condition, and he's got a bullet in his spine, lodged in his spine, plus there's additional diagnostics testing that was done showing many different causes of the pain here and many different symptoms of it, sciatica, and I can't recite them off the top of my head. But the point I want to make to your question, Your Honor, is, Judge Reinhart, that the doctor observes objectively that the plaintiff is not exhibiting the type of pain, exhibiting pain of the nature that he claims. He is not disabled. He doesn't appear to be in pain. He engages in activity and gait that suggests that he's not in pain. When a person has pain, I've had sciatica, I can't get out of bed in the morning, and I didn't have surgery for it, either, to make it go away. So But when you go to the doctor and complain of pain, my guess is the doctor says, on a scale of 1 to 10, what is it? That's my experience, too. I don't see that in the record here. Right? But there's nothing in the record about that? I didn't find it here. I didn't. I'm not arguing that there is or isn't. Yes. That's what I'm saying. The record that I looked at, and I'm, frankly, I'm taking this on appeal because Mr. Gett is unavailable. I didn't see it in the record, and so that's correct. All we have is a all that I'm aware of, Your Honor, is that the But whose fault is that, that it's not in the record? Judge Hawkins said that you go to a doctor and he says to you, is it 1 to 10, and you say to him, 15, or you say 1, whatever. And you say that's how you determine it. And then you say it's not in the record. Wouldn't that be in the medical record? The doctor would put it in the record, not the prisoner? I suppose if that was part of what happened, yes. And Judge Hawkins' question to me was, isn't that what usually happens? My experience is, yes, that's what usually happens. But as far as you can tell, that's not in the record. Your position is that to satisfy the correctional facility and its medical personnel in terms of deliberate indifference, if the record establishes that the inmate was able to communicate the problem, the concern, the pain, and the response is medically reasonable, that for deliberate indifference purposes, that's it? Oh, I believe that's an accurate statement of the law, yes. And your position is that this record establishes that? Yes. Well, in as to the first, was the pain accurately communicated, I think there's a question there because the doctor observes that the conduct of the inmate himself is such that he's not disabled, he doesn't exhibit a gait. There's a record in here where he is being treated for an injury to his hand. He was treated for an injury sustained roughhousing. There is nothing about the inmate's outward behavior that indicates the pain is of such a level. Here, this is a good criteria I think that I've heard in other cases. It interferes with his daily activities. He's just in pain. So, now, so the first question is, is that pain, does that pain rise to the level that it implicates in the Constitution? Assuming it does, the next question is, did they, and I think this is the second part of your statement, which I believe is the correct statement of the law, did the medical providers sufficiently respond that they were, that there is no question, there's a fact as to whether they were disabled deliberately indifferent. They were not deliberately indifferent. They saw him every time he requested to be seen. They gave him reasonable treatment. What I understand he wants is surgery. And I cannot see from the record why he would even want to try putting a knife near his spinal cord to fix the pain at the level he's got. But it seems to me, Counselor, at least if I'm to go along with counsel, the State of Nevada has already shown or already stipulated to the fact that the prisoner has objectively shown the deprivation was serious. I'm confused. That's what the counsel said. I'm confused. I didn't find that in the records.  If you compare, I'm trying to get your ---- I do not believe they have. I believe that what Deputy Attorney General Getty said in his brief was that he will assume for arguendo that's the case for purposes of the brief only. Okay. So really what we're talking about is the second prong, assuming for arguendo, that the prison official acted with a sufficiently culpable state of mind. Isn't that what we're really arguing about? I — that is correct, except I don't believe that's the only argument. The other argument is that the level of pain doesn't rise to the level of a template kind of implication. Which is, I believe, what the decision was below. Do I have the facts right that the prisoner said he was in pain, which we're not disputing for purposes of the argument, and that the doctor said, I'll only give you Elliville, and the prisoner said, I have a serious side reaction to that, and the doctor said, it's Elliville or I won't treat you? Is that — are those — is that the dispute? I don't know what the side effects were, other than — Oh, I know it. Yes, other than he says there were, and so I'm not going to know. I don't think the words, well, you know, if you won't follow this regimen of treatment, then I think we're done at Lovelock, I think was — I think that's in the records. Yes, Your Honor. This is not a — I take it, and you can correct me if — please correct me if I'm wrong — a case where the inmate goes to correctional facility medical staff and says, I have pain, and he's examined, and the physician at the end of the day says, I cannot find any objective indication of pain. You say you have pain, but I have — but I simply cannot find anything in my physical examination of your body or looking at your records, looking at your behavioral pattern in the institution that suggests to me that you really are in pain. That's not this case, is it? That is not this case. This is exactly — this is quite the converse of that. You do say you have pain. I'm not sure how much you have. I'm going to treat it the best way I know how, and I've tried three or four methods, and I finally settle on Elavil, and then you reject it. I don't want to take Elavil. Yeah, yeah. He rejects it. You come back and say, I have these reactions to Elavil. Correct. So I can't take Elavil because of what my side effects are, and the doctor says, well, it's Elavil or nothing, otherwise I won't treat you. I mean, that's the complaint, as I understand it. Yes, it is, and then we have a timing thing, because that's at the end of 06. So, okay, it's in December of — December 23rd of 06 — Yes. — is the point where he makes another kite, suggesting that, because he won't take Elavil, that he is not going to — that he didn't get anything, and they need something. Now, I guess I'm a little worried about exactly how we frame this issue, because it seems to me that, in the process, we're saying long-term muscle relaxants are not suitable, and we're also saying then, so this pain, even though it may be complained of, cannot take a long-term muscle relaxant, and therefore, what I'm doing for you is best I can do. I thought that's what the doctor was saying. Yes, and what I know of Flexoril and what it does, it doesn't alleviate this kind of pain. Flexoril is a muscle relaxer for — I know one thing, it's for muscle back spasms, and once you interrupt that process of the neurological stimulation of the muscles, this is a back pain associated with implication of the spinal cord and some sort of impingement and crooked and bent and so forth like that. But he tried the treatment, and frankly, I don't know what Elavil does, I don't know what that is. But, I mean, if you've got a — if it is a back pain, and now we're getting into medical difficulties, but it's a back pain associated with a crooked spine and implication of the spinal cord, then you've got all kinds of things, including manipulation and stretching and that sort of thing, as well as just an analgesic relief from the pain. Well, you know, if things had been somewhat different, I wouldn't have a problem with this. But if I understand the allegations, what the prisoner says is that I can't take this Elavil because of the side effects it's having. There, I have had a pill which didn't cause this. I'd be satisfied with that pill. And then the doctor said to him, I'm not going to give you anything else. You take Elavil or I won't treat you at all. Now, as I understand it, I'm not saying that happened. If that were not what the allegations are, you know, and the doctor said to him instead, you know, there isn't anything but Elavil. And, you know, the side effects may be worse if you don't want them because of the side effects. That's fine. But there is no other medication. But the impression I have, and we're talking about assembly judgment, is that the prisoner said that the doctor just said, you know, Elavil or nothing. He didn't say anything about the side effects. He didn't say anything about the other pill that had worked. He just said, I want Elavil or else. If that's the situation, then it seems to me you can get past assembly judgment. Well, I wouldn't necessarily agree with that. You don't agree with my statement of the facts, which may be, or you don't agree with the legal conclusion. I don't agree with the legal conclusion that it gets past assembly judgment because of the facts in this case. As I say, one issue is the degree of the pain and the doctor objective. If the pain was so severe that it interfered with his daily activities, for example, because he cannot move around, he can't get out of bed, we have a whole different situation, you have to treat it. What we have here is a situation of pain that exists as I stand here and I have it talking with the Court. And what you do about that level of pain, because the doctor observes that he is not disabled, he doesn't interfere with his gait, so I'm going to treat it a certain way, yes, there's oxycontin in it. Sotomayor, this is not a case where the medical personnel at the facility concluded that the individual was not in pain at all. That's my understanding. They treated him. They must have come to the conclusion that there was some problem with pain because they did prescribe a medication, Elevelle, right? Absolutely. They treated his pain. And they this is the this is the what's the word I'm looking for. This is the regimen of treatment that the doctor chose as appropriate for as appropriate for this particular disease. Given the allegations of the complaint, then, are we down to whether the doctor's refusal, if that's in fact what happened, to prescribe an alternative pain medication to Elevelle, whether that equals deliberate indifference? Is that where we are? I think yes, on the facts as they're presented. Okay. Thank you. All right. Thank you, counsel. Thank you very much. I'll give you one minute. Quickly, I think that the facts are important here. And first of all, I may have overstated, and I apologize if I did, but the defendants have not disputed the serious medical need element, so we move directly to the second element. Next, in regard to the degree of pain that Mr. Manley suffered, first, on summary judgment, Mr. Manley is entitled to all inferences in his favor. And the facts here show that, first of all, in the Greeno case, it states that Mr. Manley is not required under Eighth Amendment law to give objective proof of the degree of his pain. Here, up until December 4th, 2006, the defendants were treating Mr. Manley. That's not what this case is about. They were treating him. In fact, they were treating him with some success. Baclofen and Mederol had both helped his pain, but they decided not to go with those, and instead they chose Elevelle. As the record is clear, Elevelle caused nausea, dizziness and drowsiness, and those were the adverse reactions that Mr. Manley was complaining of. And Mr. Manley's sworn affidavit states that in that December 4th, 2006 visit, that Mr. — that when he told Dr. Scott that he could no longer take Elevelle, that Dr. Scott got upset. It says that he gave him an ultimatum saying that if he was no longer interested in taking Elevelle, that his treatment options with Dr. Scott were exhausted. And then when Mr. Manley insisted that he needed some other treatment and that he couldn't continue with Elevelle, it says Dr. Scott again got upset. He exclaimed that this visit is over and marched out of the examination room. That provides evidence that this — that Dr. Scott's decision may not have been related to Mr. Manley's medical care at all. And then the fact that from December 4th, 2006 to November 29th, 2007, not one bit of treatment was prescribed for Mr. Manley's chronic and substantial pain. Nothing. And yet after that, again, after November 29th, after the defendants learned that this lawsuit had been filed against them, they resumed treatment. And once again, they used the same treatments that Dr. — that Mr. Manley had requested and the same treatments that had worked before. Mederol, Baclofen both worked again. After November 29th, 2007, they worked. And the back brace that Mr. Manley had been requesting finally got prescribed. And he said it helped a little. We're not arguing here that the defendants gave no treatment before December 4th or after November 29th. This case is about what happened in between. This case is that they prescribed no treatment during that almost yearlong period. And we think that supports at least an inference of deliberate indifference. Thank you. Thank you, counsel. Thank you, counsel. The case is adjourned. It will be submitted. The Court will take a brief recess for the morning. All rise.
judges: Reinhardt, Hawkins, Smith N. R.